**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


**UNITED STATES OF AMERICA,**

      **Plaintiff,**


      **v.**                          **Case No. 2:10-CV-336
JUDGE GRAHAM
MAGISTRATE JUDGE KING**

**TOBIAS H. ELSASS,** *et al.,*

      **Defendants.**


<u>**OPINION AND ORDER**</u>

This matter is before the Court for consideration of the Defendants' *Motion for Protective Order*, Doc. No. 21.  For the reasons that follow, the motion is denied.


**I.**

Plaintiff, United States of America ["Plaintiff"], brings this action seeking injunctive and declaratory relief against Defendants Tobias H. Elsass ["Elsass"], Sensible Tax Services, Inc. ["Sensible Tax Services"], and Fraud Recovery Group, Inc. ["FRG"], in connection with the Defendants' promotion of an alleged "theft loss" tax scheme.  Defendant Elsass is a resident of Columbus, Ohio; Defendants FRG and Sensible Tax Services are corporations with their principal places of business in Worthington, Ohio.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Defendant Elsass, an attorney,[1] formed FRG in 2006.  *Complaint*, Doc. No. 1, at ¶ 28.

FRG is engaged in the business of promoting the application of the theft-loss deduction, under

§165 of the Internal Revenue Code, to victims of investment-related schemes.[2]  Defendant Elsass

operated FRG out of his home until 2008, when the business acquired the Worthington, Ohio

location.  *Id.*

According to the *Complaint*, Defendant Elsass locates instances of securities fraud or

investor fraud "that are of sufficient scope and magnitude to generate large losses for numerous

investors."  *Id.* at ¶ 29.  FRG then allegedly contacts prospective customers, through mailings,

regarding its services.  *Id.* at ¶ 31.  If the customer expresses interest, FRG then prepares a

questionnaire and engagement form but "conducts no evaluation to determine if a prospective

customer could legitimately claim a theft-loss deduction . . . ."  *Id.*  FRG charges customers for

assisting in the processing of a "theft-loss" claim.  The *Complaint* alleges as follows:

> Customers can either enter into an up-front "cash" contract, in which they pay in
> advance a fee of 15 percent of the anticipated refund (half in advance based on the
> estimated refund, with the second half after the refund is actually obtained), or a
> "deferred" contract, in which the customer pays 30 percent of the refund actually
> received (recently raised to 35 percent), with the fee being extracted from the
> customer's refund check by Elsass.  FRG and Elsass specifically warrant that
> these fees will be refunded if the theft-loss claim does not result in a tax refund . .
> . . In either case, the FRG Defendants require their customers to sign a Form 2848
> giving Elsass specifically power of attorney as the given customer/taxpayer's
> represenatative.

---

[1]According to Plaintiff, Defendant Elsass' license to practice law in the State of Ohio was indefinitely
suspended in 1999.  *Complaint*, Doc. No. 1, at ¶ 23.

[2]Section 165 of the Internal Revenue Code allows a taxpayer to claim a deduction for a loss sustained
during the taxable year and not reimbursed by insurance or otherwise.  I.R.C. § 165(a).  Section 165(c) allows a
deduction for a "theft loss," which is defined by applicable regulations to include larceny, embezzlement, and
robbery.  I.R.C. § 165(c)(3); Treas. Reg. § 1.165-8(d).

*Id.* at ¶ 32.  According to the *Complaint*, Defendant Elsass formed Sensible Tax Services in 2009 "to prepare [income tax] returns for FRG theft-loss claimant customers as well as prepare returns for taxpayers who simply want tax preparation assistance generally without claiming a theft-loss deduction."  *Id.* at ¶ 34.

The *Complaint* details specific instances of Defendants' alleged malfeasance with respect to application of the theft-loss deduction for Defendants' clients.  *See Id.* at ¶¶ 35-62.  The United States alleges that Defendants are aware of their misconduct and that the Government has been harmed as a result.  *Id.* at ¶¶ 63-64.  According to the United States, "the tax revenue lost as a result of improper theft-loss claims engineered by the Defendants is significant."[3]  *Id.* at ¶ 64.

The United States seeks injunctive relief pursuant to 26 U.S.C. §§ 7402, 7407 and 7408 to prevent the FRG Defendants from acting as tax return preparers and from advising anyone concerning federal tax matters.  The United States also seeks to prohibit Defendants from promoting their purported expertise as to application of the theft-loss deduction.  *Complaint*, at 34-37.

The issue presently before the Court concerns  "certain customer files requested in the [G]overnment's first set of document requests, and the [G]overnment's second set of interrogatories."  *Defendants' Motion for Protective Order*,  at 1 n.1.  According to the United States, the discovery materials at issue consist primarily, but not entirely, of "the tax filings of FRG customers prepared by Defendants setting forth theft loss deductions under 26 U.S.C. § 165 of the Internal Revenue Code, supplemented by back-up materials prepared internally at FRG."

---

[3]As of the date of the filing of the *Complaint*, the IRS had disallowed theft-loss claims reported by thirty-nine FRG clients.  The IRS is in the process of reviewing additional client returns.  According to the United States, the loss to the Government "could be as high as $1.8 million."  *Complaint*, Doc. No. 1, at ¶ 65.

3

*Memorandum contra*, Doc. No. 22, at 1.

By their *Motion for Protective Order,* Defendants seek to prohibit the United States from "disseminating or disclosing information it obtains or has obtained in this action to the [IRS] or any of its personnel, except as necessary to prepare and try the instant case[.]" *Motion for Protective Order,* at 1. Defendants also seek to prohibit "the use of the discovery materials by IRS personnel to whom such materials are disclosed to assist the [G]overnment's counsel in the preparation for and trial of this case, except in specific instances individually approved by the Court." *Id.* The United States opposes the motion for a protective order, arguing that it requests "unprecedented relief." *Memorandum contra*, at 1.

## II.

The Federal Rules of Civil Procedure afford to parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). Nevertheless, Rule 26 provides that a person resisting discovery may move the court, for good cause shown, to protect the person or party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir. 2001), citing *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). "To show good cause, a movant for protective order must articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.*, citing *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D. D.C. 1987). Ultimately, the grant or denial of protective orders falls within the "broad discretion of

4

the district court managing the case." *Century Prod., Inc. v. Sutter*, 837 F.2d 247, 250 (6th Cir. 1988).

In addition, the party seeking a protective order must certify that it "has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1).  This prerequisite has been met in this case.

## III.

The Court first addresses the issue of timeliness of Defendants' *Motion for Protective Order*.  The United States argues that the present motion should have been filed when discovery in this case began in June 2010.  As the United States points out, Defendants initially agreed to provide the information at issue without limitation as to its use.  Defendants' current position with respect to the proposed protective order first arose in October 2010, after Defendants retained new counsel.[4]  The United States argues that, because the issue was not raised at the outset of discovery, Defendants' motion should be denied as untimely.  *See Memorandum contra*, at 18-19.  In response, Defendants argue that, since current counsel raised the issue shortly after entering an appearance in the action, good cause exists for the failure to earlier raise an objection.

In general, "when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."  *Greene v. Cracker Barrel Old Country Store, Inc.*, No. 09-2010-A/P, 2009 WL 1885641 at *2 (W.D. Tenn. July 1, 2009), quoting

---

[4]Defendants' current counsel entered an appearance on October 6, 2010.  Counsel for both parties discussed the issue of a protective order shortly thereafter.  *See* Exhibit 2, attached to *Defendants' Reply Memorandum*, Doc. No. 29.

*Blackmond v. UT Medical Group, Inc.*, No. 02-2809-Ma/V, 2003 WL 22385678 at *1 (W.D. Tenn. Sept. 17, 2003). The waiver may, however, be excused by the court upon a showing of good cause. *Id.*; Fed. R. Civ. P. 33(b)(4).

The Court concludes that good cause exists to excuse Defendants' failure to earlier raise the issue. Given the change in Defendants' counsel, and the relatively early stage of this case, the Court finds that good cause exists to excuse Defendants' initial failure raise an objection. Thus, the Court will proceed to consider the merits of Defendants' motion.

The Court observes at the outset that Defendants do not argue that the requested discovery materials at issue are not relevant to the issues in this case or that the United States is not entitled to use those materials in the prosecution of its case. Rather, Defendants contend that the materials should not be shared with IRS personnel, except to the extent necessary for resolution of the claims asserted in this case. Otherwise, Defendants argue, their business will be injured.

As noted *supra*, Defendants bear the burden of articulating specific facts regarding the alleged injury that would result in the absence of a protective order. In support of their motion, Defendants proffer the declaration of Laurie B. Wirt, an attorney licensed in the State of Ohio who is employed by Defendant FRG. *See* Exhibit 1 attached to *Defendants' Motion for Protective Order.* Ms. Wirt represents taxpayers in IRS audits and appeals. *Id.* at ¶ 2. Ms. Wirt avers:

> Based upon my conversations with [IRS] examiners and appeals officers, I infer tha[t] many, if not most, are aware that a complaint has been filed against [Defendants]. I also infer that most are familiar with the specific allegations contained in the complaint. It appears to me that the IRS is disallowing theft loss deductions prepared by [Defendants] solely based upon the existence of the complaint and nothing more, without regard to the merits of the specific

6

deductions.

*Id.* at ¶ 10.   Ms. Wirt specifically refers to one conversation with an IRS examiner who indicated that he "was surprised to hear from [Ms. Wirt]" as he thought the Defendants' business had been "closed down" as a result of this action.  *Id.* at ¶ 9.

Based on the foregoing, Defendants argue that they have "good reason to fear IRS abuse, and seek the Court's protection from a [G]overnment effort to put them out of business" as a result of the pendency of this action.  *Motion for Protective Order*,  at 9.  Defendants cite *United States v. Zerjav, et al.*, case no. 4:08CV0020 (D. Mo. March 31, 2009) in support of their position.

In *Zerjav*, the district court considered whether the United States was entitled to a preliminary injunction on its claims that defendants had violated 26 U.S.C. §§ 7402, 7407, and 7408.  Defendants in that case were engaged in the business of income tax preparation and providing tax planning advice.  The United States alleged that the Defendants gave fraudulent advice so that clients improperly reduced their federal tax liabilities.  *See Zerjav*, slip op. at 2, attached as Exhibit to *Defendants' Motion for Protective Order.*  After a preliminary injunction hearing, which included the testimony of IRS examiners, the court concluded that a preliminary injunction was not warranted.  In particular, the court found that the United States had failed to demonstrate a likelihood of success on the merits of its claim, reasoning that "the responsibility for the unreasonable deductions lies with the taxpayers themselves and . . .  the Government's investigation [of Defendants' business] was misdirected."  *Id.* at 56.  The court noted, however, that its finding "does not mean that the Government will not ultimately be able to prevail on the merits after presenting additional evidence . . . ."  *Id.*  In considering the harm that would result

from a preliminary injunction, the court found that injunctive relief "would close Defendants' business [since] [t]he nature of a certified public accountant firm dictates that a client base be maintained from year to year." *Id.* at 55. Finally, the court found that the public interest would not be served by the issuance of a preliminary injunction. In the court's view, the United States had ignored the responsibility of taxpayers for taking unreasonable deductions and instead engaged in an investigation of Defendants' business to achieve a goal of shutting that business down. *Id.* at 57.

The posture of the *Zerjav* case is distinguishable from that in the case at bar[5] and its relevance to the instant action is minimal. Furthermore, there is no evidence in this case to suggest that the United States' investigation of Defendants' business is misdirected. As the United States points out, the IRS was engaged in audits relating to Defendants' treatment of the theft-loss deduction prior to the filing of this action. According to the United States, the IRS audit process is proceeding independently of this action. *Memorandum contra*, at 12.

Whether or not a protective order is warranted in this case turns on whether Defendants have articulated facts showing a clearly defined and serious injury. Ms. Wirt avers that "it appears to [her]," from conversations with various IRS examiners, that the IRS is disallowing theft loss deductions prepared by Defendants based solely on the existence of this lawsuit. *See Wirt Declaration* at ¶ 10. In the Court's view, the Wirt declaration does not establish that there is a clearly defined and serious injury in this regard. Although various IRS examiners may have told Ms. Wirt that they are aware of the instant action, there is no evidence, other than Ms. Wirt's speculation, that theft loss deductions prepared by Defendants are routinely denied by the

---

[5]Moreover, as the United States points out, a stipulated order for a permanent injunction was ultimately issued in the *Zerjav* case. *See* Exhibit 1 attached to *Memorandum contra*.

IRS merely because of the pendency of this action.

The United States represents that it seeks the production of FRG customer tax filings and related materials to prove the claims raised in this action. *Memorandum contra* at 13. The Government represents that it will share information with the IRS only when counsel reasonably believes that to do so is necessary for law enforcement purposes and not as a routine matter. *See Id.* at 14, n.7. Although Defendants fear that the IRS will "abuse" the materials gained through the discovery process in this case, *Reply Memorandum*, Doc. No. 29, at 12, there is no evidence to suggest that the United States has done so to date or will do so in the future. Indeed, as the United States points out, the issuance of a protective order as requested by Defendants would be unprecedented, would restrict to an unwarranted degree the ability of the Government to enforce the laws and would improperly shift to the Government the burden in connection with the issuance of a protective order.

In sum, the Court concludes that Defendants have failed to establish that the protective order sought by them is warranted..

## IV.

**WHEREUPON**, Defendants' *Motion for Protective Order*, **Doc. No. 21**, is **DENIED**.

**January 31, 2011**                            *s/ Norah McCann King*
**DATE**                                      NORAH McCANN KING
                                             UNITED STATES MAGISTRATE JUDGE