IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

  Plaintiff,

v.              Case No. 2:10-CV-336
                 Judge Graham
                 Magistrate Judge King

TOBIAS H. ELSASS, *et al.*,

  Defendants.

**OPINION AND ORDER**

This matter is before the Court for consideration of the Defendants' *Motion to Compel Discovery*, Doc. No. 37.  For the reasons that follow, the motion is denied.

**I.**

The United States of America ["Plaintiff"] brings this action for injunctive and declaratory relief under 26 U.S.C. §§7402,[1] 7407[2] and 7408[3] against Defendants Tobias H.

---

[1] Section 7402 provides, in pertinent part, that the District Courts of the United states "shall have such jurisdiction to make and issue in civil actions . . . orders of injunction . . . as may be necessary or appropriate for the enforcement of the internal revenue laws."

[2] Section 7407 governs actions to enjoin "tax preparers."
[I]f the court finds –
 (1) that a tax return preparer has –
  (A) engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title,
  (B) misrepresented his eligibility to practice before the Internal Revenue Service, or otherwise misrepresented his experience or education as a tax return preparer,
  (C) guaranteed the payment of any tax refund or the allowance of any tax credit, or
  (D) engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws, and
 (2) that injunctive relief is appropriate to prevent the recurrence of such conduct,

Elsass ["Elsass"], Sensible Tax Services, Inc. ["STS"] and Fraud Recovery Group, Inc. ["FRG"] in connection with what Plaintiff characterizes as Defendants' promotion of a theft loss tax scheme.  Plaintiff specifically asks that Defendants be enjoined from acting as tax return preparers, from providing advice concerning federal tax matters and from promoting their claimed expertise as to the application of the "theft-loss" deduction under Internal Revenue Code § 165.[4]  *Complaint*, Doc. No. 1, at ¶¶ 34-37.  Plaintiff alleges that Defendant Elsass formed FRG in 2006, *id.* at ¶ 28, as a means for promoting the application of the theft-loss deduction to victims of investment-related schemes.  According to Plaintiff, Defendant Elsass located alleged instances of securities or investor fraud "that are of sufficient scope and magnitude to generate large losses for numerous investors."  *Id.* at ¶ 29.  FRG then contacted prospective customers regarding its services.  *Id.* at ¶ 31.  Should a customer express interest, FRG then prepared a questionnaire and engagement form but "conduct[ed] no evaluation to determine if a prospective customer could legitimately claim a theft-loss deduction . . . ."  *Id.*  FRG charged customers for assisting in the processing of a theft-loss claim.

---

the court may enjoin such person from further engaging in such conduct.  If the court finds that a tax return preparer has continually or repeatedly engaged in any conduct described in subsections (A) through (D) of this subsection and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, the court may enjoin such person from acting as a tax return preparer.

[3]Section 7408 governs actions to enjoin specified conduct related to tax shelters and reportable transactions.  The statute defines "specified conduct" as "any action, or failure to take action, which is – [either] (1) subject to penalty under sections 6700, 6701, 6707, or 6708, or (2) in violation of any requirement under regulations issued under section 330 of title 31, United States Code." § 7408(c).  If the court finds that the defendant "has engaged in any specified conduct, and [finds] that injunctive relief is appropriate to prevent recurrence of such conduct," the court may "enjoin such person from engaging in such conduct or in any other activity subject to penalty under this title." § 7408(b).

[4]Section 165 of the Internal Revenue Code allows a taxpayer to claim a deduction for a loss sustained during the taxable year and not reimbursed by insurance or otherwise.  26 U.S.C. § 165(a).  Section 165(c) allows a deduction for a "theft loss," which is defined by applicable regulations to include larceny, embezzlement and robbery. § 165(c)(3); 26 C.F.R. § 1.165-8(d).

> Customers can either enter into an up-front "cash" contract, in which they pay in advance a fee of 15 percent of the anticipated refund (half in advance based on the estimated refund, with the second half after the refund is actually obtained), or a "deferred" contract, in which the customer pays 30 percent of the refund actually received (recently raised to 35 percent), with the fee being extracted from the customer's refund check by Elsass. FRG and Elsass specifically warrant that these fees will be refunded if the theft-loss claim does not result in a tax refund . . . . In either case, the FRG Defendants require their customers to sign a Form 2848 giving Elsass specifically power of attorney as the given customer/taxpayer's represenatative.

*Id.,* at ¶ 32. According to the *Complaint*, Defendant Elsass formed STS in 2009 "to prepare [income tax] returns for FRG theft-loss claimant customers as well as prepare returns for taxpayers who simply want tax preparation assistance generally without claiming a theft-loss deduction." *Id.* at ¶ 34.

The *Complaint* details specific instances of Defendants' alleged misconduct in connection with the application of the theft-loss deduction on behalf of Defendants' clients. *Id.* at ¶¶ 35-62. According to Plaintiff, "the tax revenue lost as a result of improper theft-loss claims engineered by the Defendants is significant."[5] *Id.* at ¶ 64.

In their *Motion to Compel*, Defendants seek discovery of documents and electronically stored information ["ESI"] which, Defendants contend, are relevant to their defense of the action. Plaintiff opposes the motion to compel.[6]

---

[5]As of the date of the filing of the *Complaint*, the IRS had disallowed theft-loss claims made by thirty-nine FRG clients and was continuing to review returns. According to Plaintiff, the loss to the Government "could be as high as $1.8 million." *Complaint*, at ¶ 65.

[6]Plaintiff also requests oral argument on the issues presented. The Court concludes that oral argument is unnecessary to the resolution of the motion to compel. *See* S.D. Ohio Civ. R. 7.1(b)(2). Plaintiff's request is therefore denied.

**II.**

Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery provided that the motion includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests. Plaintiff contends that the *Motion to Compel* was filed during the course of Plaintiff's production and supplementation of its discovery responses and that Defendants have therefore failed to exhaust all extra-judicial means of resolving the issues raised in the motion. Defendants reply that the then-existing discovery deadline[7] compelled the filing of the motion. *Defendants' Reply*, Doc. No. 45, p. 8. Regardless, the Court will address the merits of those issues on which the parties appear to have reached impasse; to the extent that other matters are appropriately the subject of further discussion between the parties, the Court will expect the parties to engage in such discussion.[8]

Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Relevance for discovery purposes is extremely broad. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-01 (6th Cir. 1970). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Martin v. Select Portfolio Serving Holding Corp.*, No.

---

[7]The pretrial schedule has, since the filing of the *Motion to Compel*, been revised. *See Order*, Doc. No. 61.

[8]For example, Defendants have asked that the investigating agent's investigative file be produced and that, "[i]f it has been produced, the government should be required to specifically identify it." *Reply*, at 21. The Court will expect the parties to resolve this issue informally, if they have not already done so.

4

1:05-CV-273, 2006 U.S. Dist. LEXIS 68779, at *2 (S.D. Ohio September 25, 2006), citing *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 154, 159 (D. D.C. 1999).

However, a court "must limit the frequency or extent of discovery otherwise allowed by" the rules if the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," or if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Rule 26(b)(2)(C)(i)-(iii).

Determining the proper scope of discovery falls within the broad discretion of the trial court. *Lewis,* at 402 . "Although [parties] should not be denied access to information necessary to establish [their defenses], neither may a [party] be permitted 'to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007), quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978).

### III.

One of the primary defenses asserted in this action addresses Plaintiff's allegation of willfulness or intentional misconduct on the part of Defendants. Because the Internal Revenue Service has, in at least some instances, allegedly taken positions consistent with those taken by Defendants in processing theft loss deductions on behalf of their clients, Defendants argue that they had reason to believe that those theft loss deductions were proper. Moreover, Defendants

contend, variations in the analyses of theft loss claims "within, between and among IRS offices" reflect confusion as to the lawfulness of the claimed theft loss deductions and therefore serve to undermine any suggestion of willfulness on the part of Defendants. *Motion to Compel*, pp. 1-2.

During the course of discovery, Defendants requested taxpayer files. In response, Plaintiff produced some files but, according to Defendants, those files contain unexplained "gaps in the IRS's internal numbering." Defendants move to compel the production of "complete" taxpayer files as kept in the ordinary course of business.[9] Defendants also sought production of "various categories of documents and other data prepared by the IRS and used in its audits of the [D]efendants' clients." *Id.* at 14. *See also id.* at 17. Although the United States produced "final" versions of various documents and correspondence in response to those requests, it did not, apparently, produce electronically stored information ["ESI"] in the form of "drafts, revisions, and reviewer comments concerning documents prepared using a word processor." *Id.* at 14-15. Defendants also requested the production of "email from certain custodians, including IRS personnel[10] involved in decision-making concerning theft-loss claims prepared by the [D]efendants." *Id.* at 17. In response, Plaintiff expressed a willingness to produce "in paper form nonprivileged emails responsive to document requests, if any, contained in the investigatory or administrative files." *See* Exhibit 5, attached to *Motion to Compel*.[11]

---

[9] It appears that, since the filing of the *Motion to Compel*, Plaintiff has produced substantial additional discovery to Defendants, including paper records of audits and reviews of audits. *See Declaration of Ricky Poole*, Exhibit 2 attached to *Memorandum in Opposition to Motion to Compel*, ¶¶ 37-40,

[10] In particular, "revenue agents, supervisors, project team members, review team members, Appeals Division personnel, or any other IRS components' personnel involved with the [D]efendants or the theft-loss issue." *Motion to Compel*, Doc. No. 37, at 17.

[11] Noting that Plaintiff did not originally articulate the distinction between "investigatory" and "administrative" files, Defendants expressed concern that "significant discoverable documents, including ESI, has been withheld." *Motion to Compel,* at 18. However, Plaintiff has now provided that articulation. *See Declaration*

Defendants now ask that Plaintiff "identify discoverable categories of ESI, and produce that data in native file format," *id.* at 14, arguing that metadata is necessary to their defense and is likely to reveal whether there was internal confusion at the IRS concerning the application of §165(c)(2). *Id.* at 15. *See also id.* at 19. Defendants also seek an "index or description of the documents withheld, or the basis for withholding them." *Id.* at 12. Moreover, Defendants seek the identity of all custodians and sources of Plaintiff's documents so that they might "test the sufficiency of the government's search for or production of responsive materials." *Id.*, at 18.

**IV.**

Defendants contend that the requested discovery is relevant to, or is at least reasonably calculated to lead to the discovery of admissible evidence relating to, their defenses of "reasonable cause" and "lack of willfulness." *Id.,* at 10. In order to assess the merits of Defendants' position as to the relevance of the discovery sought, the Court must consider the law applicable to the issues in this case. As the United States points out, there are various methods by which it may pursue its claim for injunctive relief. Defendants' *Motion to Compel* concerns a defense to one such method under § 7407, *i.e.,* proof of a violation of § 6694, which governs "understatement of taxpayer's liability by tax return preparer." Section 6694(a)(3) provides that "[n]o penalty shall be imposed under this subsection if it is shown that there is *reasonable cause* for the understatement *and* the tax return preparer acted in *good faith*." 26 U.S.C. § 6694(a)(3) (emphasis added).

The regulations associated with § 6694(a)(3) list five factors for consideration to determine whether a tax preparer is entitled to the "reasonable cause" or "good faith" defense:

---

*of Ricky Poole*, Exhibit 2 attached to *Memorandum in Opposition to Motion to Compel*, ¶¶ 8-14; 31-36.

(1) the nature of the error; (2) the frequency of the errors; (3) the materiality of the errors; (4) the preparer's normal office practice; and (5) reliance on the advice of another preparer. 26 C.F.R.§ 1.6694 2(d). It is the preparer who bears the burden of establishing the defense. 26 U.S.C. § 6694(a)(3); 26 C.F.R. § 1.6694-2(e)(2).

In seeking to compel discovery, Defendants argue that "[t]he government's internal understanding of when there is reasonable cause to allow a theft loss deduction is relevant, or likely to lead to the discovery of admissible evidence at trial." *Motion to Compel*, at 8. Defendants further argue that "some agents having allowed refunds on theft loss claims provides the [D]efendants with reasonable cause for submitting additional such claims." *Id.* at 9. In addition, Defendants contend that inconsistency within the IRS "is highly relevant to the issue of 'willful violation' of the tax law." *Id.*

Defendants' arguments are flawed. As addressed by the United States Court of Appeals for the Ninth Circuit in *United States v. Kapp*, 564 F.3d 1103 (9th Cir. 2009), the determinations of IRS employees are not relevant to the defenses of "reasonable cause" and "good faith" on the part of a tax preparer. In *Kapp*, a tax preparer claimed that, in understating his clients' tax liability, the preparer relied on the advice of "numerous government officials and attorneys," including some at the IRS. *Id.* at 1113. The tax preparer also argued that, because the IRS had audited other returns prepared by him and claiming similar deductions but did not require any changes in their returns, there was evidence of "reasonable cause." *Id.* The Ninth Circuit concluded that such evidence did not entitle the defendant tax preparer to assert the "reasonable cause" defense under § 6694(a)(3). "[G]overnment employees contacted by [the defendant] do not qualify as preparers under the regulations, and [the defendant] was not entitled to rely on

8

their advice." *Id.*, citing Treas. Reg. § 301.7701-15(a); 301.7701-15(a)(6) (defining a "preparer" as a person who prepares returns for compensation and specifically excluding IRS employees performing official duties). The court also concluded that the defendant tax preparer could not rely on "no change" determinations in other IRS audits since, under 26 U.S.C. § 6110(k)(3), "a written determination may not be used or cited as precedent." *Id.* at 1113-14.

The facts presented in this case are analogous to those in *Kapp*. Like the tax preparer in *Kapp*, Defendants in this case are attempting to establish their defenses of "reasonable cause" and "good faith" by reference to the application and interpretation by IRS employees of the particular deduction at issue – here, the "theft loss" deduction. This Court concludes that the manner in which the IRS interpreted and applied the laws and regulations governing the deduction is immaterial to whether or not Defendants acted with "reasonable cause" or in "good faith" as those terms are used in § 6694(a)(3). Similarly, any alleged internal inconsistency in the IRS's application of the deduction has no bearing on these defenses. Moreover, injunctive relief may be awarded under § 7407 upon proof of not only intentional disregard of the law but also recklessness. *See* Treas. Reg. § 1.6693-3(c)("a preparer is considered to have recklessly or intentionally disregarded a rule or regulation if the preparer takes a position . . . that is contrary to a rule or regulation and the preparer knows of, or is reckless in not knowing of, the rule or regulation in question").

In any event, Defendants' far-reaching discovery requests are not tailored to their own articulated need for the discovery. Even assuming that actions or positions taken by IRS employees are relevant to the defenses of reasonable cause and wilfulness, it is only those actions or those positions of which Defendants had actual knowledge that would be relevant.

Actions or positions of which Defendants had no knowledge are simply irrelevant to Defendants' state of mind or to the reasonableness of Defendants' conduct.[12]  Of course, evidence of actions or positions of which Defendants had actual knowledge are likely to be within Defendants' own knowledge, possession and control.  Under these circumstances, discovery of such information from Plaintiff is likely to be less convenient, more burdensome and more expensive than is otherwise warranted.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).[13]

For these reasons, the Court concludes that Defendants' *Motion to Compel*, Doc. No. 37, is without merit and it is therefore **DENIED**.


September 6, 2011                                                    *s/   Norah McCann King*
                                                                            Norah McCann King
                                                                            United States Magistrate Judge

---

[12] Certainly, for example, the metadata underlying internal IRS documents can have no relevance on Defendants' defenses.

[13] As noted *supra,* Defendants also seek the identity of all custodians and sources of Plaintiff's documents so that they might test the sufficiency of the government's search for and production of responsive materials.  It is unclear to what extent this request remains in dispute in light of this Court's contraction of the scope of Defendants' discovery requests.  The Court therefore leaves this issue to the parties for further discussion.