```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

  **vs.**                                       **Civil Action 2:10-CV-336**
                                               **Judge Economus**
                                               **Magistrate Judge King**

**TOBIAS H. ELSASS, *et al.*,**

      **Defendants.**


## OPINION AND ORDER

This matter is before the Court on *United States' Motion to Quash and/or For Protective Order*, Doc. No. 107 ("*Motion to Quash*").  For the reasons that follow, the *Motion for Protective Order* is **GRANTED**.

**I.**    **BACKGROUND**

This Court has previously set forth the facts in this case. *Opinion and Order*, Doc. No. 62, pp. 1-3.  Briefly, the United States of America ("plaintiff" or "the Government") brings this action for injunctive and declaratory relief under 26 U.S.C. §§ 7402, 7407[1] and

---

[1] Section 7407 governs actions to enjoin "tax return preparers":

```
[I]f the court finds--
   (1) that a tax return preparer has--
      (A) engaged in any conduct subject to penalty under section
      6694 or 6695 [26 USCS § 6694 or 6695], or subject to any
      criminal penalty provided by this title,
      (B) misrepresented his eligibility to practice before the
      Internal Revenue Service, or otherwise misrepresented his
      experience or education as a tax return preparer,
      © guaranteed the payment of any tax refund or the allowance
      of any tax credit, or
      (D) engaged in any other fraudulent or deceptive conduct
      which substantially interferes with the proper
      administration of the Internal Revenue laws, and
   (2) that injunctive relief is appropriate to prevent the
recurrence of such conduct, the court may enjoin such person from
further engaging in such conduct. If the court finds that a tax
return preparer has continually or repeatedly engaged in any
conduct described in subparagraphs (A) through (D) of this
subsection and that an injunction prohibiting such conduct would
not be sufficient to prevent such person's interference with the
```

7408 against defendants Tobias H. Elsass ("Elsass"), Sensible Tax Services, Inc. ("STS") and Fraud Recovery Group, Inc. ("FRG")[2] in connection with what plaintiff characterizes as defendants' promotion of a theft loss tax scheme.  Plaintiff specifically asks that defendants be enjoined from acting as tax return preparers, from providing advice concerning federal tax matters and from promoting their claimed expertise as to the application of the "theft-loss" deduction under Internal Revenue Code § 165.  *Complaint*, Doc. No. 1, at ¶¶ 34-37.

Plaintiff alleges that defendant Elsass formed FRG in 2006, *id*. at ¶ 28, as a means for promoting the application of the theft-loss deduction to victims of investment-related schemes.  FRG contacts prospective customers regarding its services.  *Id*. at ¶ 31.  Should a customer express interest, FRG then prepares a questionnaire and engagement form but allegedly "conducts no evaluation to determine if a prospective customer could legitimately claim a theft-loss deduction. . ."  *Id*.  According to the *Complaint*, defendant Elsass formed STS in 2009 "to prepare [income tax] returns for FRG theft-loss claimant customers as well as prepare returns for taxpayers who simply want tax preparation assistance generally without claiming a theft-loss deduction."  *Id*. at ¶ 34.

The *Complaint* details specific instances of defendants' alleged misconduct in connection with the application of the theft-loss deduction on behalf of defendants' clients.  *Id*. at ¶¶ 35-62.

---

proper administration of this title, the court may enjoin such person from acting as a tax return preparer.

26 U.S.C. § 7407(b).

[2]The Court will refer collectively to STS and FRG as "the FRG defendants."

According to plaintiff, "the tax revenue lost as a result of improper theft-loss claims engineered by the Defendants is significant." *Id.* at ¶ 64.

After discovery commenced, a dispute arose and defendants filed a motion to compel, seeking an order compelling information regarding the Government's internal understanding of when there is reasonable cause[3] to allow a theft-loss deduction. Doc. No. 37. On September 6, 2011, the Court denied defendants' motion, concluding that

> the manner in which the IRS interpreted and applied the laws and regulations governing the deduction is immaterial to whether or not Defendants acted with "reasonable cause" or in "good faith" as those terms are used in [26 U.S.C.] § 6694(a)(3). Similarly, any alleged internal inconsistency in the IRS's application of the deduction has no bearing on those defenses.

*Opinion and Order*, Doc. No. 62, p. 9. The Court went on to note that

> it is only those actions or those positions [taken by the IRS] of which Defendants had actual knowledge that would be relevant. Actions or positions of which Defendants had no knowledge are simply irrelevant to Defendants' state of mind or to the reasonableness of Defendants' conduct.

*Id*. at 9-10.[4]

Counsel for defendants withdrew on November 2, 2011. *Opinion and Order*, Doc. No. 86. On December 22, 2011, the Court revised the case schedule, requiring, *inter alia*, that all discovery be completed by April 30, 2012. *Order*, Doc. No. 88, p. 2. The Court specifically

---

[3] 26 U.S.C. § 6694 governs "understatement of taxpayer's liability by tax return preparer." Section 6694(a)(3) provides that "[n]o penalty shall be imposed under this subsection if it is shown that there is reasonable cause for the understatement and the tax return preparer acted in good faith." 26 U.S.C. § 6694(a)(3).

[4] Defendants' objections to this decision were subsequently overruled. *Memorandum Opinion and Order*, Doc. No. 98.

advised the parties that "the discovery completion date requires that discovery requests be made sufficiently in advance to permit timely response by that date." *Id*.

New counsel for the FRG defendants entered an appearance on January 13, 2012. *Notice*, Doc. No. 90. On January 19, 2012, the Court conferred with plaintiff's counsel, counsel for the FRG defendants and defendant Elsass, who is now proceeding *pro se*. *Order*, Doc. No. 92. During that conference, the Government took the position that the Court's earlier denial of defendants' motion to compel, *Opinion and Order*, Doc. No. 62, foreclosed depositions proposed by defendant Elsass. *Id*. at 2. The Court advised that "[i]f defendant Elsass concludes that there exists a discovery dispute relating to his requested discovery, he shall either file a motion to compel discovery or seek a discovery conference with the Court." *Id*.

On February 26, 2012, defendant Elsass e-mailed plaintiff's counsel, identifying several IRS employees whom he wished to depose. *Exhibit B*, p. 1, attached to *Motion to Quash*. Plaintiff's counsel refused to produce the requested individuals for deposition. Thereafter, defendant Elsass, acting *pro se*, signed and served subpoenas by Federal Express on March 7, 2012, for the depositions of Patrick Von Ahn, an IRS Revenue Agent, and Marci Holland, an IRS Appeals Officer, on March 7, 2012 (collectively, "the subpoenas"). *Exhibit D* and *Exhibit E*, attached to *Motion to Quash*.

Plaintiff moved, pursuant to Fed. R. Civ. P. 26© and 45(c)(3), for an order quashing and/or for a protective order prohibiting defendants from deposing Mr. Von Ahn and Ms. Holland or any other IRS witnesses in the future. After plaintiff filed the *Motion to Quash*, the Court suspended the depositions of Mr. Von Ahn and Ms. Holland

4

pending resolution of plaintiff's motion and accelerated the briefing schedule.  *Order*, Doc. No. 110, p. 2.  Defendants oppose the *Motion to Quash*.  *Defendants Fraud Recovery Group Inc. & Sensible Tax Service's Memorandum Contra United States' Motion to Quash*, Doc. No. 111 ("*FRG Defendants' Response*"); *Defendant Elsass Responses to Plaintiff's Motion to Quash and for Protective Order and Courts Order of March 14, 2012 regarding Defendants Discovery*, Doc. No. 112 ("*Elsass's Response*").  With the filing of plaintiff's reply, *Reply in Support of United States' Motion to Quash and/or for Protective Order*, Doc. No. 115 ("*Plaintiff's Reply*"), this matter is now ripe for resolution.

**II.   STANDARD**

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ."  Fed. R. Civ. P. 26(b)(1).  Relevance for discovery purposes is extremely broad.  *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  However, "district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce."  *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)).  In determining the proper scope of discovery, a district court balances a party's "right to discovery with the need to prevent 'fishing expeditions.'"  *Conti v. Am. Axle & Mfg*., No. 08-1301, 326 Fed. Appx. 900, at *907 (6th Cir. May 22, 2009) (quoting *Bush v. Dictaphone Corp*., 161 F.3d 363, 367 (6th Cir. 1998)).

Here, plaintiff has moved for a protective order to prohibit defendants from deposing certain IRS witnesses.  Rule 26 of the Federal Rules of Civil Procedure provides that a person resisting

discovery may move the court, for good cause shown, to protect the person from "annoyance, embarrassment, oppression, or undue burden or expense, including. . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A).  "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, No. 00-3033, 11 Fed. Appx. 498, 500 (6th Cir. May 24, 2001).  The grant or denial of a request for a protective order falls within "'the broad discretion of the district court in managing the case.'" *Conti*, 326 Fed. Appx. at *903-04 (6th Cir. May 22, 2009) (quoting *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989)). Finally, the party seeking a protective order must certify that it "has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1).  This prerequisite has been met in this case. *Motion to Quash*, p. 2.

Plaintiff has also moved to quash the subpoenas directed to Mr. Von Ahn and Ms. Holland.  Under Rule 45 of the Federal Rules of Civil Procedure, parties may command a nonparty to, *inter alia*, attend a deposition and/or produce documents.  Fed. R. Civ. P. 45(a)(1).  Rule 45 further provides that "the issuing court must quash or modify a subpoena that. . . fails to allow a reasonable time to comply. . . or. . . subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(I), (iv).  Although irrelevance or overbreadth are not specifically listed under Rule 45 as a basis for quashing a subpoena, courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 353 (S.D. Ohio 2011) (internal quotation marks omitted).  "[A]bsent a claim of privilege, a party has

6

no standing to challenge a subpoena to a nonparty." *Novovic v. Greyhound Lines, Inc.*, 2:09-CV-00753, 2012 U.S. Dist. LEXIS 9203, at *23 (S.D. Ohio Jan. 26, 2012) (quoting *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002)) (internal quotation marks omitted). *See also Mann v. University of Cincinnati*, Nos. 95-3195 and 95-3292, 1997 U.S. App. LEXIS 12482, at *13 (6th Cir. May 27, 1997) (citing 9A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (1995) (noting that "ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought")).

### III. DISCUSSION

As an initial matter, there is no dispute that plaintiff is acting on behalf of Mr. Von Ahn and Ms. Holland when moving to quash the subpoenas directed at these individuals, *i.e.*, that plaintiff has standing to quash the subpoenas directed at these nonparty employees of plaintiff. *See*, *e.g.*, *Motion to Quash*, pp. 4-6. Turning to the subpoenas themselves, the Court agrees with the Government that the subpoenas are facially invalid for a number of reasons. First, under Rule 45, only the clerk or an attorney may issue a subpoena. Fed. R. Civ. P. 45(a)(3). Here, defendant Elsass, who is not a licensed attorney, signed both subpoenas. *See* Exhibits D and E, attached to *Motion to Quash*. Second, plaintiff represents, and defendants do not deny, that defendant Elsass sent the subpoenas by express mail instead of hand delivery, in contravention of Rule 45(b)(1). Third, Rule 45 requires that "the court for the district where the deposition is to be taken" must issue the subpoena. Fed. R. Civ. P. 45(a)(2)(B). According to the subpoenas purportedly issued from this Court,

defendant Elsass seeks to depose Mr. Von Ahn and Ms. Holland in Las Vegas, Nevada, *see* Exhibits D and E, attached to *Motion to Quash*. However, to depose these witnesses in Nevada, a subpoena must issue from the district court in that state, not from this Court.  Although these facial deficiencies are fatal to the subpoenas, the Court will nevertheless consider the merits of the subpoenas and the propriety of deposing other IRS witnesses in the future.

In addition to Mr. Von Ahn and Ms. Holland, defendants have identified several IRS employees targeted for deposition.  The Court will address each witness in turn.

### A.   Preparers of a Report Dated September 27, 2011 and Entitled "Many Investment Theft Loss Deductions Appear to Be Erroneous"

Defendants seek to depose J. Russell George, Michael R. Phillips, or any "similarly situated individual" who was involved in the research and creation of a report issued by the Treasury Inspector General for Tax Administration ("TIGTA") dated September 27, 2011 and entitled, "Many Investment Theft Loss Deductions Appear to be Erroneous" ("the Report").  *See FRG Defendants' Response*, pp. 2-3; *Elsass's Response*, p. 3.  The Report concludes that most theft loss claims are improper.  *See* Exhibit A (the Report), p. 2, attached to *FRG Defendants' Response* ("TIGTA estimates that 1,788 (82 percent) of 2,177 taxpayers may have erroneously claimed deductions totaling more than $697 million[.]").  Defendant Elsass believes that "this report is very useful in his defense!"  *Elsass's Response*, p. 3.  The FRG defendants first note that, in order to prevail, the Government must establish that defendants (1) submitted a tax return containing a frivolous or unrealistic position, (2) willfully attempted to

8

understate a customer's tax liability, or (3) recklessly or intentionally disregarded rules and regulations. *FRG Defendants' Response*, pp. 2-3 (citing I.R.C. Sec. 7407). The FRG defendants go on to contend that the Court should permit the requested depositions because (1) "the Court would be benefited [sic] by hearing testimony and receiving evidence regarding the success of 165(c)(2) claims on a nationwide scale;" (2) the anticipated testimony will "allow the Court to compare the success rate of Corporate Defendants [FRG defendants] to the estimated success rate of the general population;" and (3) the "evidence will provide the Court a 'base line' by which to evaluate Defendants' conduct[,]" enabling defendants to show that they enjoy a much higher success rate than 18 percent. *Id*. at 3.

The Government opposes these depositions, arguing that no TIGTA official or employee is a proper witness for two reasons. *Reply*, pp. 5-6. First, no TIGTA witness has personal knowledge of the facts in dispute. *Id*. at 5. Second, the personal views of government employees or personnel responsible for policy matters or who prepared a study are not discoverable. *Id*. at 5-6. Finally, plaintiff contends that the Court has previously rejected the reasons advanced by defendants for seeking the anticipated witness testimony. *Id*. at 6 n.4 (citing *Opinion and Order*, Doc. No. 62).

Plaintiff's arguments are well-taken. Defendants obviously have access to the Report; none of the defendants suggest that any of these IRS witnesses have any personal knowledge regarding the material facts in this case. Moreover, by seeking to examine the facts underlying the preparation of the Report, which discusses many "factors and statistics which will be presented by the Defendants[,]" *FRG Defendants' Response*, p. 2, defendants hope to discover internal IRS

9

communications and/or the personal views of these IRS individuals. However, defendants cite to no authority permitting this type of discovery. *See*, *e.g.*, *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) ("The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency."); *Evergreen Trading, LLC v. United States*, 75 Fed. Cl. 730 (2007) (concluding that personal views or intentions of Treasury regulations are irrelevant to the litigation's claims and defenses and issuing protective order as to requested depositions of individuals who were involved in the drafting of certain Treasury regulations).

    **B.  Jeffrey Kaplan**

Defendants also seek to depose Jeffrey Kaplan, an IRS Appeals Technical Guidance Coordinator who works in Boston, Massachusetts. *Reply*, p. 7. Defendants believe that Mr. Kaplan oversees certain agents who denied claims, including some claims submitted by the FRG defendants, at Mr. Kaplan's direction. *Elsass's Response*, p. 4; *FRG Defendants' Response*, pp. 4-5. Defendants also believe that Mr. Kaplan is an "expert" in Section 165(c)(2) claims. *Id*. The FRG defendants further explain that they seek to depose Mr. Kaplan "to explore what position he holds in evaluating 165(c)(2) claims." *FRG Defendants' Response*, p. 5. However, this Court has previously concluded that the personal views of individual IRS personnel regarding Section 165 claims are irrelevant to whether or not defendants violated the law. *Opinion and Order*, Doc. No. 62. Similarly, Mr. Kaplan's insight into internal IRS management of the appeals group is beyond the scope of the claims and defenses in this case. Moreover, even if defendants could articulate the relevance of

10

this testimony, it is not immediately apparent that these internal communications are discoverable.  *See*, *e.g.*, *Proctor & Gamble Co. v. United States*, No. 1:08-cv-608, 2009 U.S. Dist. LEXIS 124049 (S.D. Ohio Dec. 31, 2009) (finding that the deliberative process privilege, which applies to "the examinations of tax returns, including the notes of audit agents" where "production of the contested documents would be injurious to the consultative functions of government").

### C. Appeals Officers

Defendants identify five IRS Appeals Officers for deposition: Marci Holland; Teresa Yu (in San Diego, California); Tina Scheider[5] (in Philadelphia, Pennsylvania); Joseph Kuberacki (in Cleveland, Ohio); and Paula Stanton (in Philadelphia, Pennsylvania).  Exhibit E (subpoena to Marci Holland), attached to *Motion to Quash*; *Elsass's Response*, pp. 4-5; *FRG Defendants' Response*, pp. 4-5 (identifying Ms. Yu, Ms. Scheider and Mr. Kuberacki as potential witnesses); *Reply*, p. 8 (identifying the locations of the four Appeals Officers).

#### 1. Marci Holland

Although defendant Elsass previously attempted to serve a deposition subpoena on Ms. Holland, none of the defendants identify this witness when explaining why they wish to depose other individuals.  Under these circumstances, the Court presumes that defendants no longer seek to depose Ms. Holland.

#### 2. Teresa Yu

Defendants contend that Ms. Yu served as the Appeals Officer for at least three taxpayer appeals processed by the FRG defendants. *Elsass's Response*, p. 4; *FRG Defendants' Response*, p. 4.  Defendant

---

[5] Plaintiff represents that defendants incorrectly refer to this witness as "Tina Schneider."  *Reply*, p. 8.

11

Elsass contends that Ms. Yu has stated on "numerous occasions" that she "knows nothing" about Section 165(C)(2), yet she has denied "numerous" claims of this sort. *Elsass's Response*, p. 4 (citing to IRS letter dated February 16, 2012 signed by Ms. Yu and addressed to Christian M. Bourdel, attached thereto). Defendant Elsass argues that defendants need "about 5 complete files" from Ms. Yu that apparently reflect these statements. *Id*. After an initial review of "230+ customer files," compiled for production to plaintiff, the FRG defendants believe that Ms. Yu handled at least three of defendants' files. *FRG Defendants' Response*, p. 4. The FRG defendants seek to depose her "regarding those three files and any other taxpayer files which have been previously produced in this litigation." *Id*. They further argue that Ms. Yu is an appropriate fact witness because she "has specific knowledge regarding the government's allegations against the Corporate Defendants[.]" *Id*.

As an initial matter, plaintiff represents that Ms. Yu's name does not appear on any of the documents produced by defendants to date. *Reply*, p. 8 n.5 (representing that plaintiff has combined its production of documents with all documents produced by the FRG defendants in a single searchable electronic database comprising over 300,000 documents). Therefore, the record is controverted as to whether Ms. Yu has any knowledge regarding any aspect of this case. However, even assuming that Ms. Yu does have knowledge regarding this case, the Court is not persuaded that defendants are entitled to depose Ms. Yu. It appears that defendants wish to explore Ms. Yu's personal opinions regarding theft loss deductions – discovery that this Court has previously denied.

Finally, as plaintiff points out, defendants' desire to depose

12

Appeals Officers suggests that defendants wish to rely on determinations at the Appeals level to exonerate defendants' actions. *Reply*, p. 10. To the extent that defendants intend that such discovery will support the argument that the resolution of a taxpayer's appeal proves that defendants did not engage in misconduct, that argument misses the mark. Settlement of cases is the goal of the administrative appeals process. *See* Internal Revenue Manual § 8.6.4.1(1) ("The Appeals mission is to resolve tax controversies, without litigation, on a basis which is fair and impartial to both the Government and the taxpayer and in a manner that will enhance voluntary compliance and public confidence in the integrity and efficiency of the Service."). Therefore, the settlement of an individual taxpayer's appeal could be based on any number of reasons and would have no bearing on the defenses in this case.

### 3. Tina Scheider

The FRG defendants contend that Tina Scheider "was assigned to at least one of the 230+ recently requested taxpayer files" and they wish to depose her for the same reasons advanced for deposing Ms. Yu. *FRG Defendants' Response*, p. 4. Defendant Elsass adds that he wishes to depose Ms. Scheider because she was part of a group that issued inconsistent decisions. *Elsass's Response*, p. 4 (stating that Ms. Scheider's group "looked at numerous FRG 165 refund claims and denied refunds for scams where FRG has over 200 approvals from all levels of the IRS of the same scam").

Like Ms. Yu, plaintiff represents that Ms. Scheider's name does not appear on any of the documents exchanged in discovery. *Reply*, p. 8. Regardless, because the FRG defendants offer the same justification for deposing Ms. Scheider as they offered for deposing

13

Ms. Yu, that argument fails for the same reasons. Moreover, as to defendant Elsass's assertion that Ms. Scheider's group issued decisions inconsistent with other IRS rulings, alleged internal inconsistency in the application of the deduction has no bearing on the defenses raised in this case for the reasons discussed *supra*.

### 4. Paula Stanton

Only defendant Elsass seeks to depose Paula Stanton, representing that she was part of Ms. Scheider's group that issued inconsistent decisions. *Elsass's Response*, p. 4. Plaintiff concedes that Ms. Stanton may have been directly involved in five to ten theft loss claims submitted by defendants, but denies that her testimony, *i.e.*, her individual views on denial of theft loss claims, is appropriate. *Reply*, p. 9. For the reasons discussed *supra*, this Court agrees.

### 5. Joseph Kuberacki

Defendants also seek to depose Joseph Kuberacki. *Elsass's Response*, p. 5; *FRG Defendants' Response*, p. 4. Defendant Elsass argues that Mr. Kuberacki "has seen numerous" claims filed by defendants; defendant Elsass criticizes Mr. Kuberacki's decisions as well as the speed with which he renders those decisions. *Elsass's Response*, p. 5. The FRG defendants represent that they seek to depose this witness "for similar reasons as Ms. Yu and Ms. Scheider." *FRG Defendants' Response*, p. 4. Again, plaintiff concedes that Mr. Kuberacki may have been directly involved in five to ten of the theft loss claims submitted by defendants, but denies that his testimony is appropriate. *Reply*, p. 9. This Court agrees.

### D. Revenue Officers

Defendants also seek to depose three Revenue Officers: Patrick Von Ahn; Jeremy Meyer (located in Detroit, Michigan); and Mary Unger

14

(located in the Philadelphia region). *FRG Defendants' Response*, pp. 4-5; *Elsass's Response*, pp. 4-5; *Reply*, p. 10 (identifying locations of the Revenue Officers). Defendants complain that these individuals have handled defendants' claims, some or all of which have been denied, and defendants suspect that the Revenue Officers deny defendants' claims – not on the merits of those claims – but because they were filed by the FRG defendants. *Elsass's Response*, pp. 4-5; *FRG Defendants' Response*, pp. 4-5. Defendant Elsass asserts that Ms. Unger, in particular, even apologized to certain taxpayers for denying their claim. *Elsass's Response*, p. 4. The FRG defendants specifically seek to discover the "rationale and reasoning for denying taxpayer returns[.]" *FRG Defendants' Response*, p. 5.

Again, and for reasons repeated *supra*, to the extent that defendants seek to discover these agents' personal interpretation of the laws and regulations governing this deduction is immaterial to the legality of defendants' conduct.

The Court therefore concludes that the *United States' Motion to Quash and/or For Protective Order*, Doc. No. 107, is meritorious and it is therefore **GRANTED**.

April 23, 2012                                    s/Norah McCann King
                                                  Norah McCann King
                                                  United States Magistrate Judge

15